## LOUDEN MACHINERY CO. v. JANESVILLE HAY TOOL CO.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1906.)

No. 1,254.

1. PATENTS—INFRINGEMENT—HAY CARRIERS.

The Burkholder patent, No. 490,738, for an adjustable stop device for hay carriers, is limited as to all of its claims to a device having extending wings as shown in the specification and drawings. As so construed, *held* not infringed.

2. SAME—INVENTION.

The Louden patents, Nos. 493,216 and 526,839, both for track hangers for hay carriers, show only combinations of old elements each previously used to perform the same functions in analogous arts, and are void for lack of invention.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

For opinion below, see 141 Fed. 975.

The complainant below, the Louden Machinery Company, appeals from a decree upon final hearing dismissing its bill, which alleges infringement by the appellee of three patents owned by the appellant.

The several patents and their claims, respectively, involved in the controversy are as follows:

First. Patent No. 490,738, issued to John H. Burkholder January 31, 1893, which is called in the record the "stop block" patent. It states the object of the invention: "To provide a suitable stop for hay carriers, which can be easily adjusted to any point along the suspended track upon which said hay carrier travels; which does not interfere in any way with the lateral flanges of the track upon which the truck of such carrier travels, and which does not require any tapping or other mutilation of the said track, substantially as hereinafter fully described, and as illustrated in the drawings."

The main specification is as follows: "My invention consists of a casting having two corresponding vertical lugs, C, C, which are parallel to each other and are separated a distance corresponding to the width of the bead on the upper edge of the vertical part of track, B, so that they may rest upon the basal flanges thereof on either side of its vertical part. These lugs are connected a suitable distance above the track by a suitable web and have projecting laterally outward from their upper ends the wings or arms, D. These wings, D, are elevated such a distance above the tread of the rail that the travelers of the hay carrier truck can easily pass under them, and the extent of their lateral projection is such that the frame work of the upper part of the hay carrier when passing thereunder will not interfere with the vertical

part of said wings which extend downward to a suitable point below the frame of the rail where their lower edges are turned inward a suitable distance so as to arrest and stop the further progress of the hay carrier when traveling toward it. These wings constitute one of the most important features of my invention, and they may be of any shape or design desired which will permit their lower ends to get in such position that they will stop the progress of the hay carrier by reason of the end of the carrier striking against said stop, or by reason of a suitable lateral projection, J, of the hay carrier striking against the end adjacent to the free extremities of the wings, substantially as shown in Fig. 1. It is obvious, then, that they may be made of a more open construction than that shown in the accompanying drawings and yet serve the purpose of my invention."

Figures 1 and 7 of the patent drawings illustrate the invention.

There are six claims in the patent, but claim 1 is relied upon, reading as follows: "(1) The combination with an inverted T-shaped track, and a hay carrier stopping device secured to and over the vertical portion of said track, and carying on both sides the double inclined lug. g, of a hay carrier having a vertically movable catch block, F, the upper ends of which extend above the

sides of said carrier and have lateral projections, which engage with said inclines, as set forth."

Second. The second patent, called a "track hanger patent," is No. 493,216, issued to William Louden March 7, 1893, for "Hay Carrier Track," which states the invention to be "in hay carrier tracks wherein an inverted metal T-rail is used for the track, and it has for its object the arrangement of the track hangers so that they can be readily attached to any part of the smaller upper flanges of said rail without having to drill holes in the rail or cut away any part of the flanges, so that it can be properly suspended and the lower and larger flange left free for the passage of the carrier over them, all this being accomplished by the use of my improved track hangers without the employment of any extra clamps or other rigging except the means necessary to hold the hanger in position on the rail. I attain this by the mechanism illustrated in the accompanying drawings."

The following drawing shows the device:

Claims 1, 6, 7, and 8 are involved, as follows:

"(1) In hay-carriers, a track suspending device consisting of two separable parts having means at their lower ends to embrace the edge of a track rail, and at their other ends means to catch over an extraneous supporting device, the said parts being arranged side by side, and means for holding the two parts together, substantially as set forth."

"(6) A track suspending device consisting of two parts having flanges at their lower ends adapted to fit under the flanges of the rail, extensions, O, resting against said web, a suspending loop at the upper ends of the parts and means for holding the two parts together.

"(7) In a hay carrier, the combination with an inverted T-rail, of a suspending device consisting of two separable parts having means at their upper ends to embrace the upper edge of the rail leaving the side flanges free for the passage of the carrier, a loop at their other ends for attachment to an overhead support, and means for locking the two parts of the suspending device together, substantially as set forth.

"(8) A track suspending device consisting of two separable parts constructed at one end to embrace the edge of a track rail and at the other end to form a

loop, the two parts being arranged side by side, and means for holding the two parts together."

Third. The third patent, also called a "track hanger" patent, is No. 526,839, issued to William Louden, October 2, 1894, for a "Hay Carrier Apparatus." The claims in suit are 1, 2, 3, and 4 (of the 15 claims in the patent), and they sufficiently describe the device, as follows:

"(1) In hay carriers the combination of a metallic track having an upper central web, a two part clamping device to embrace the web and a threaded bolt and nut to hold the parts together, said clamping parts where the bolt passes through them being set to one side of the center line of the track, substantially as and for the purpose set forth.

"(2) In hay carriers, the combination of a metallic track having an upper central web, a two part clamping device to embrace the web and a threaded bolt and nut to hold the parts together, one of said clamping parts being dished into the other one where the bolt passes through them, so as to set the head of the bolt further from the center of said track than the nut of said bolt."

"(3) In hay carriers, the combination of a metallic track having an upper vertical web and two horizontal side flanges, a two part hanging device adapted to clamp upon the web and support the track, a carrier adapted to traverse the side flanges and having an opening through its upper edge to escape the hanger, and a threaded bolt and nut to hold the parts of the hanger together, said clamping parts, where the bolt passes through them, being set to one side of the center line of the track, substantially as, and for the purpose set forth."

"(4) In hay carriers, the combination of a metallic track having an upper vertical web, and two horizontal side flanges, a two part hanging device adapted to clasp upon the web and support the track, a carrier adapted to traverse the side flanges and having an opening through the upper edge to escape the hanger, and a threaded bolt and nut to hold the parts of the hanger together, one of the parts of said hanging device being dished into the other part where the bolt passes through them, so as to set the head of said bolt further from the center of said track than the nut of the bolt."

W. Clyde Jones, for appellant.
Chas. K. Offield and Albert H. Graves, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts), delivered the opinion of the court.

The parties to the controversy are manufacturers of hay carriers, among other products, with various devices in the field for competition in their sale. Owning three patents adapted to conjoint use in a hay carrier, the appellant sues for alleged infringement by the appellee in such use. The first patent in suit is No. 490,738, for an "adjustable stop device for hay carriers," issued to J. H. Burkholder January 31, 1893, and the defense of noninfringement is upheld by the opinion filed below. Upon the other patents, both issued to William Louden, for track hanger devices—No. 493,216 of March 7, 1893 and No. 526,839 of October 2, 1894—the fact of infringement is unquestionable, but the court was of opinion that each was invalid, for want of invention and relief was denied in conformity with that view. Each of these patents in suit presents the meritorious features of utility and simplicity. The issue referred to under each is within narrow compass, but is, nevertheless, not free from difficulty in respect of the two track hanger patents.

148 F.—44

1. When Burkholder applied for the patent, issued as No. 490,738, hay carriers were common, with analogous devices, as mentioned and exemplified in Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 261, 15 Sup. Ct. 837, 39 L. Ed. 973; and he was merely an improver upon the means for an adjustable stop-block. The claim of novelty rests on the adaptability of the stopping device to adjustment on inverted T-rail tracks without "tapping or other mutilation" of the track. In the specifications of the patent the invention is described as "a casting having two corresponding vertical lugs, cc"—located with reference to each other and the bead of inverted T-rail tracks as specified—connected above the track by a web and having "projecting laterally outward from their upper ends the wings or arms, D." These wings are arranged so that "the travelers of the hay carrier truck are easily passed under them," and the "carrier will not interfere with the vertical part of said wings which extend downward to a suitable point below the frame of the rail, where their lower edges are turned inward" for stopping the carrier; and it is further specified that the wings "constitute one of the most important features of my invention, and they may be of any shape or design" which will serve such purpose, or "may be made of a more open construction than that shown" in the drawings. All the claims except the first expressly mention these wings, D D, as elements of the combination, while claim 1 which is relied upon, states the combination in more general terms, namely:

"An inverted T-shaped track, and a hay carrier stopping device secured to and over the vertical portion of said track, and carrying on both sides the double inclined lug, g, of a hay-carrier having a vertically moving catch block, F, the upper ends of which extend above the sides of said carrier and have lateral projections which engage with said inclines, as set forth."

The device made by the appellee alleged to be an infringement is even simpler than that specified in the patent. The so-called "double incline lug" is used, with the vertical T-rail; but it is secured to the top of the rail web, stands above the rail, and is thus adapted to engage the trip mechanism of the hay carrier. So arranged, the wings specified in the patent, to carry the inclined lugs below the rail, are, of course, obviated, and no element is employed which answers their description. Nevertheless, it is contended that claim 1 is infringed, that such claim is generic and the wings were omitted in that view, and that claim 1 is not otherwise distinguishable from claim 2, which includes the wings, and must therefore be broadly construed as covering the appellee's structure.

The question of interpretation thus raised calls for no detailed review of the prior art disclosed in the various patents in evidence, as facts and circumstances which are deemed sufficient to that end are either conceded or established beyond doubt; nor is it needful to discuss the merits of the invention, or the classification in the appellant's brief of the stages of evolution in stop-block means of which the patent is assumed to be the "culminating step." In the first place the patentee, in his specifications, has carefully guarded against prior references both by definition of his invention—as resting in his novel form of casting and arrangement of stop device and lugs, with special reference

to the wings as "one of the most important features"—and by dis-claimer of novelty in the hay carrier, or in "the catch block, F, except so far as the extending outward of the extremities thereof is concerned when used in conjunction with my invention." It is settled by the evi-dence, as well, that use of the inverted T-rail and of the "double inclin-ed lugs" appeared in like prior combinations with these elements for hay carriers, and we are satisfied, not only that the scope of the patentee's invention was narrow in fact, but that such limitation was advisedly recognized in his specifications, and is conclusive against the broad interpretation now sought.

As claim 1 was allowed by the Patent Office with no express mention of the wings, aside from the mention of a stopping device secured to and over the track "and carrying on both sides the double inclined lug, g," and is thus susceptible, when read either alone or on reference to claim 2, of interpretation for generic means to carry the lugs, it may be true, in the absence of other proof of the intention of the parties to the grant, that such interpretation would be subject only to the test of validity. The contract, however, is within the cardinal rule that the manifest intention of the parties must govern its construction (vide O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 343, 72 C. C. A. 304), and the evidence is unmistakable, as we believe, that the carrying means referred to were understood to be the so-called wings specified in the patent, varied only as there stated, "of any shape or design desired which will permit their lower ends" to contact with the carrier and per-form their function, "substantially as shown in Fig. 1."

This understanding of the grant appears throughout the specifica-tions, without qualification, and is confirmed by the attending circum-stances of the grant to one Myers of letters patent No. 466,616 January 5, 1892, which describes a hay carrier stop-block, without the wings and identical with the appellee's structure. While this patent was issued more than a year in advance of the patent in suit, the application for it was filed 11 days after that of Burkholder, so that they were for a time co-pending in the Patent Office. No interference was declared, as the rules of that office required in case the claims were deemed con-flicting, or the claim of the one included that of the other (Ex parte Upton, 27 Off. Gaz. 99), and the priority of invention rested there—as it rests here—on the date of filing. That the existence of the Myers' patent was recognized and its drawings cited during the pendency of the Burkholder application is a conceded fact. Whether the failure to declare interference was intentional or inadvertent, or whether the language of claim 1 was duly observed in the allowance, are not perti-nent inquiries upon the present issue. The fact of the allowance, with the grant to Myers in view, and under the circumstances stated, is presumptive of an understanding that claim 1 was limited to the struc-ture substantially as described—not in conflict with Myers' device—and of purpose to confer monopoly within such scope. The presump-tion thus arising would not overcome the grant for an invention which was broadly specified and broad in fact; but we are of opinion that it is consistent with the specifications of the Burkholder patent and con-forms to the utmost scope of invention under the evidence.

The claim in suit was construed by the trial court in accord with this view, and it was rightly ruled thereupon that patent No. 490,738 was not infringed.

2. The first track hanger patent of Louden, No. 493,216, describes an adjustable means for the suspension of an inverted T-rail for use in hay carrier tracks. It is a simple structure of a pair of sister hooks or loops, to be clamped upon the rail by means of a bolt or slip-ring, and provided at the lower end with groove or flange to engage the flange of the rail. Like means were in common use for analogous purpose, and the want of novelty in the mechanism is not seriously disputed; but it is contended, in substance, that this means was not used for a track hanger, although "long sought in the hay-carrier art," and that "the difficulty of attaining the idea" to adapt the means to this use involved patentable invention (vide Hobbs v. Beach, 180 U. S. 383, 393, 21 Sup. Ct. 409, 45 L. Ed. 586), even if the "mechanical alterations" were otherwise without that quality. The rule is unquestionable that new adaptation of old means may constitute invention—that the test may reside in the creative thought, rather than the mechanical difficulties to be overcome—but it is equally well settled that monopoly cannot be granted for an adaptation which is merely a double use, or calls only for the exercise of ordinary mechanical skill. So the rule referred to furnishes no solution of the present issue, whether the use of this means to support the track of a hay carrier involved invention in the sense of the patent law, or mere mechanical skill. The line of distinction between the one and the other attribute is incapable of clear general definition, and the grant of a patent which is rightly presumptive of invention should not be defeated as wanting that quality, unless the prior art plainly taught such adaptation. But, when analogous use of the means is well known and no substantial departure appears in the patentee's adaptation, monopoly cannot be authorized within the policy of the law.

The argument of counsel and experts in support of the appellant's contention rests upon an array of hay-carrier devices—from the crude beginnings with tracks of "wooden beams fixedly mounted in position" to the present development, referred to in the foregoing discussion of patent No. 490,738—and the so-called evolutions of this art are therein classified as showing nine steps in the development of the track-hanger means, with extended references to the devices and the means shown in each for carrying the track, culminating in the patent in suit, which discloses the first use of a two-part hanger, or sister hooks. Our examination of the patents referred to leads to the conclusion that the array is more specious in the classification than pertinent in the actual facts to the present inquiry, and that they do not sustain the contention, either of long-standing want of means to suspend the T-rail track of a hay carrier, or of extended and unsuccessful effort by inventors to solve the alleged problem. Indeed, the adoption of the inverted rail for the hay carrier was too recent at the time Louden claims to have invented his hanger, to afford room for the evolution recited.

The provision for support of the track in most of the patents referred to was merely incidental to the invention described in each, and

well adapted to the special track; and the evolution as classified was in hay carriers, and not track supporters, except that three of the references for the last three classifications were for improvement in metal tracks which included suspension means and two (of 1890) were for supports. These devices for tracks and supports are Ney's patent (1883) No. 287,772; Grosscup's (1884) No. 293,452; Myers' (1886) No. 310,055; Porter's (1890) No. 423,274; and Myers' (1890) No. 440,602. In the patents of Ney and Grosscup the essence of the claim in each was the special form of track, with the simple form of hook, as an incidental (adjustable) hanger means—one with "T-shaped heads" to embrace and support the "angle-irons" and the other inserted through holes in the "channel iron"—and each ample for the purpose. Myers' patent of 1886 was for a special form of double track and means for coupling the tracks together, with like simple form of hook, which was adjustable between and clamped the rails, and performed its functions completely. With the 1890 patents of Porter and Myers the track hanger makes its first appearance as the feature of alleged invention, the one arranged to slip over and, embrace the head of an inverted T-rail, and the other bifurcated at the lower end having gripping jaws to engage the rail and was then secured by a bolt or slip ring. Porter thus had another object in view—to carry the hanger (adjustably) on the rail and avoid clamping—for which the device was effective, so it is not in point (laying aside the matter of its recent date), and the Myers last-mentioned patent appears to be the only one which shows prior effort directed to the special problem which was solved by Mr. Louden, notwithstanding the parade of such efforts mentioned in his testimony; and even these patents of 1890 are not to be considered in this view, if the Louden device was actually perfected, as he states, prior to either application.

The question of invention, therefore, as we believe, is not aided materially for solution by these references, nor can its consideration be narrowed to the field of hay-carrier devices. The need of suspension means for a track which will accommodate various carriers is not uncommon, and each adaptation to the special purpose is not per se entitled to a patent. When invention is claimed of the means so adapted, it must be tested as well by the general art; and the claims in suit are subject to such broad inquiry as indicated in the opinion of the trial court. The suspension means of the so-called sister hooks or loops, in the patent device, were plainly without novelty for such purpose. Their general definition in the Standard Dictionary—as "a pair of hooks so mounted that they face and overlap each other; match hooks" —is mentioned in the opinion below as recognition of like form and use. Familiar examples appear on singletrees for a wagon, in harness for a horse, and in the clip hooks for vessel rigging. In Patterson's Nautical Encyclopedia, "clip hooks" are thus defined:

"Two regular shaped iron hooks having one side flat, suspended (reversed to one another) from a small iron thimble. By overlapping, these two shapes form one complete inclosing hook. These are also known as sister hooks."

Substantially identical means and use, moreover, for clamping and suspending a rail, appear in Forshey's patent of 1888, No. 308,483, for

a "track fastener," and in Daft's of 1887, No. 361,676. The means for clamping the rail are met in P. A. Myers' patent of 1884, No. 307,725, for a hay carrier, and that structure, although not in the sister-hook form, appears to answer the language of three of the claims in suit.

We perceive no escape from the conclusion that the means described in each of the claims were thus within public knowledge, and that the adaptation to suspend the inverted T-rail in the improved hay carrier, when need arose, to accommodate the improved means, was not, for such function, patentable invention.

3. The remaining patent of Louden, No. 526,839, includes another form of clamping or suspension device for hay carriers, wherein the two parts are "dished," so that the bolt and nut will not project to interfere with the carrier; or, in the language of appellant's brief, "to carry the nut and threaded end of the bolt inward toward the medial line, thus equalizing the position of the bolt as a whole." Of the claims in suit, the first two appear to be drawn broadly for a clamping device, and the other two for a two-part hanger. The method pointed out of "dishing or setting to one side" is the only feature of the device which differs from the claims of the above-mentioned patent No. 493,216, and this expedient, commonly called "countersinking," is so well known that it would surely occur to the mechanic whenever it was discovered that the bolt interfered or was liable to interfere with the operating of the carrier. We are of opinion that such provision is plainly within the range of ordinary mechanical skill—not the "inventive idea" for which the appellant contends—and that no patentable feature appears in these claims, under the general doctrine above stated in reference to No. 493,216.

The decree of the Circuit Court conforms to the foregoing views, and is affirmed.