## O'BRIEN–WORTHEN CO. v. STEMPEL.

(Circuit Court of Appeals, Eighth Circuit. December 11, 1913.)

No. 3,908.

*(Syllabus by the Court.)*

**1. PATENTS (§ 163*)—CLAIMS—ESTOPPEL BY ACQUIESCENCE IN REJECTION AND AMENDMENT.**

The patentee in letters patent No. 688,446, who described and claimed in his original petition for a patent on improvements in gum plasters an elastic medicated suction cup, a suction cup adapted to contain a medicament in the forms of a pasty composition, a medicated piece of raw cotton and in any other form, and a rubber suction cup combined with an absorbent material for holding and retaining the medicament and who acquiesced in the rejection of all these claims on Rosell's patent, No. 624,- 545, and Kusnik's patent, No. 647,003, amended his petition and accepted a claim for an elastic cup to whose inner surface an absorbent lining for holding and retaining a medicament is securely fixed, is estopped from maintaining that this claim is infringed by the manufacture and sale of an elastic cup to whose inner surface a pasty composition consisting of dextrine, water, and the medicament oleoresin of capsicum, is applied and permitted to dry into a solid adhesive lining before its sale or use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 238; Dec. Dig. § 163.*]

**2. PATENTS (§ 163*)—CLAIMS—ESTOPPEL BY ACQUIESCENCE IN REJECTION AND AMENDMENT.**

If a patentee acquiesces in the rejection of his claims on references cited in the Patent Office and accepts a patent on an amended or substituted claim, he is thereby estopped from maintaining that the amended or substituted claim covers the devices or combinations shown in the references, and from successfully claiming that it has the breadth of the claims that were rejected, but he is not estopped from claiming and securing by his amended claim every known and useful improvement which he has invented and which is not disclosed by the references.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 238; Dec. Dig. § 163.*]

**3. PATENTS (§ 27*)—CLAIM—LIMITATION BY OLD USE—"INVENTION."**

The application of an old device to a new use is not always or generally even patentable. It is only when the new use is so recondite and remote from that to which the old device has been applied, or for which it was conceived, that its application to the new use would not occur to the mind of the ordinary mechanic skilled in the art, that there is invention in the conception of its application to the new use and the old use fails to limit the claim of such an application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 4, pp. 3749–3754.]

**4. PATENTS (§ 173*)—RIGHTS OF PRIOR PATENTEE—KNOWLEDGE OF USES.**

A prior patentee who has plainly described and claimed his device or combination has the right to every use to which it can be applied and to every way in which it can be utilized to perform its function, whether he was aware of all these uses or not.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 248; Dec. Dig. § 173.*]

**5. PATENTS (§ 167*)—SPECIFICATION AND CLAIMS—CONSTRUCTION.**

The specification and claims of a patent constitute a contract between the United States and the patentee, and they must be read and construed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

together in the same way and by the same rules by which other contracts are interpreted.

The specification which forms a part of the same petition or application as the claims must be read and interpreted with them, not for the purpose of limiting or of contracting, or of expanding the latter, but for the purpose of ascertaining from the entire agreement, of which the specification and the claims are alike a part, the actual intention of the parties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Bill by Herman F. Stempel, Jr., against the O'Brien-Worthen Company, a corporation. From an interlocutory decree for an injunction against infringement and for an accounting, defendant appeals. Reversed and remanded, with directions.

Paul Bakewell, of St. Louis, Mo., for appellant.

J. D. Rippey, of St. Louis, Mo. (L. C. Kingsland, of St. Louis, Mo., and Omar E. Herminghausen, of Ft. Madison, Iowa, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

SANBORN, Circuit Judge. [1] On December 10, 1901, letters patent No. 688,446 were issued to the appellee, Herman F. Stempel, Jr., for improvements in gum plasters. This is an appeal from an interlocutory decree against the appellant for an injunction against infringement and for an accounting. As usual, the finding of the validity of the patent and the finding of its infringement are challenged.

The object of the invention, its character, and extent, are portrayed by the following excerpts from the specification:

"The object of the present invention is to provide a plaster which will securely hold itself in the position in which it is applied whether the gum be moist or not. In fact, if moist the plaster will have a greater retaining or adhesive power.

"With this object in view, the invention consists in a plaster for applying medicaments to the gum consisting of an elastic cup having a convex inner surface, to which inner surface is securely fixed an absorbent lining for holding and retaining the medicament, the device being of a size easily covered by the lips of the wearer. * * * In the drawings A denotes a cup, made preferably of rubber, and B denotes a piece of absorbent material secured within the cup. The medicament is placed in the cup and the cup forced against that part of the gum to which it is desired to apply it and will be securely retained in position by the suction due to the forcing of the air from out of the cup in the act of pressing it against the gum. The medicament may be applied to the cup in other ways than by providing the cup with a piece of absorbent material. For instance, a piece of raw cotton made up into a little sphere may be supplied with the medicine, packed into the cup; and the cup then applied to the gum."

The claim is:

"A plaster for applying medicaments to the gum consisting of an elastic cup having a convex inner surface, to which inner surface is securely fixed an ab-

sorbent lining for holding and retaining the medicament, the device being of a size easily covered by the lips of the wearer, substantially as described."

The alleged infringing device is such an elastic rubber cup as is described in the foregoing specification, in which a medicated absorbent lining, made substantially as follows, is secured to the inner surface of the cup by adhesion. Dextrine is the adhesive substance used upon postage stamps and envelopes. Powdered dextrine and water are mixed to the consistency of a light syrupy paste. To this mixture is added an equal quantity of the medicament oleoresin of capsicum in a liquid form, and about two drops of the paste thus formed are placed in each cup and permitted to dry so that they make a solid lining fastened by adhesion to the inner surface of the cup. Cups made and lined in this way have been manufactured and sold by the appellee under this patent to the value of $46,000; in other words, this cup has gone into general commercial use. For many years the appellant bought these cups of the appellee to the number of 10,000 boxes, but in the later years it has declined to buy and has manufactured in the same way cups of the same character and sold them to its customers.

The specification and claim of this patent demonstrate that the primary object of the invention was the securing of the cup and its lining to the gum, and this was accomplished by the partial vacuum made by the act of pressing it upon the gum. That method of securing a cup to parts of the human body, however, was old and had been often used and described so that the controversy about infringement in this suit rages over the lining of the cup and its fastening within it. The specification plainly indicates that the inventor's preferred method of making and using his cup was to secure within it a piece of absorbent material, such as a piece of muslin, thereafter to saturate this material with the medicament and apply the cup thus medicated to the gum. But the specification does not confine his invention or the monopoly of his patent to that method, but expressly declares that the medicament may be applied to the cup "in other ways than by providing the cup with a piece of absorbent material," so that in the absence of limitation of the claim by the prior state of the art, or by a disclaimer or estoppel of the patentee, the cups of the defendant which are elastic and which have absorbent linings securely fixed to their inner surfaces would fall within the terms of the claim and the specification and would constitute infringements of the patent.

But counsel for the appellant insists that the prior state of the art and the acquiescence of the appellee in the rejection of certain claims in his original application by the examiner in the Patent Office so limit the effect of the claim finally allowed to him that the cups of the appellant fall without its legal scope and meaning. Let us turn to the prior state of the art, the file wrapper and its contents.

Letters patent No. 335,799, issued February 9, 1886, to Frank B. Darby, described a dental capsicum plaster consisting of a compound of powdered capsicum, ginger, flavoring spice, and a solution of rubber forming a paste which is spread upon a piece of muslin or cloth to the back of which a gum or rubber tissue or disk is applied. Here was a

piece of absorbent material secured to the rubber holder, but the holder was not cup shaped, but flat, and when placed upon the gum it was held in its position solely by the pressure of the lip or check upon a cushion upon the back of the rubber disk and not by suction.

On July 22, 1890, letters patent No. 432,798, were issued to Charles S. Hirst, for a cup or receptacle to hold a poultice or other material. In his specification Hirst declared that his cup was preferably made of soft rubber or other pliable elastic or flexible material in the shape of a hemisphere, and that upon the application of the cup with the poultice or other remedial preparation to the affected part the material would be confined within the cup and the latter would retain its hold by suction and would exclude the air. Here was the elastic cup of the appellee and the medicament within it, but there was no absorbent lining to it.

Letters patent No. 624,545, issued May 6, 1899, to Claude A. O. Rosell, disclosed an elastic cup made preferably of pure Para rubber for the primary purpose of increasing the flow of blood to the scalp and the growth of hair thereon by means of the suction caused by the partial vacuum produced by compressing the cup upon the treated part of the scalp. But Rosell declared in his specification that "besides the special action upon the scalp, the elastic cupping device has numerous and important therapeutic applications in the development of tissue, where needed, in the treatment of atrophied conditions in the various parts of the body, etc.," and that "in general therapeutics the pneumatic cup or disk is of the greatest value." His specification also contained this paragraph:

"In some cases the cup may be made to fit air-tight by adhesion merely. Generally, however, it is necessary to prevent the air from entering at the edge or periphery. This result is readily attained by internally coating or covering the cup either throughout or merely at the periphery, as shown in Figure II, with a coating of suitable lute or ointment, such as cold cream, petroleum or beeswax, or preferably by a lute possessing desirable medicinal or nutrient properties, in which case the lute serves the double purpose of securing a tight joint and of conveying medicinal or nutrient agencies to the scalp."

And his fifth claim was:

"A surgical cupping device in the form of an elastic cup or dish with a flaring rim adapted to have a lute or ointment applied to the interior surface thereof."

In this specification and claim are found the elastic cup and the medicated lining securely fastened to its inner surface by adhesion.

In the original petition or application of the appellee in the Patent Office for the allowance of his patent, the paragraph of his specification quoted at the opening of this opinion which commences with the words, "With this object in view the invention consists," appeared in this form:

"With this object in view the invention consists broadly of a medicated suction cup and, specifically, in an elastic suction cup provided with an absorbent material for holding or retaining a medicant."

The last-quoted sentence of the specification preceding the claim read in this way:

"For instance, a piece of raw cotton made up into a little sphere may be supplied with the medicine packed into the cup and the cup applied to the gum, or, if the medicament be of a pasty composition, this composition may be placed in the cup and the cup applied to the gum."

And the petition contained five claims, the first for a medicated and the second for an elastic medicated suction cup, the third and fourth for a suction cup adapted to contain a medicament, and the fifth for a rubber suction cup in combination with absorbent material adapted to contain a medicament. The examiner rejected all these claims on Rosell's patent and wrote:

"Particular attention is called to the specification of this patent which refers to the use of medicinal agents in connection with the suction cup."

The appellee acquiesced in the rejection and amended his petition by striking out the words "or if the medicament be of a pasty composition, this composition may be placed in the cup and the cup applied directly to the gum" and his first four claims, and added a claim for "an elastic suction cup provided with an absorbent lining adapted to contain a medicament." The examiner thereupon rejected both claims on the patent to Kuznik, No. 647,003, which shows absorbent cotton in a rubber sack. The appellee acquiesced in this rejection and so amended his petition as to put it in the form of the present specification and claim of his patent.

[2] It is an indisputable principle of the law of patents that, if a patentee acquiesces in the rejection of his claims on references cited in the Patent Office and accepts a patent on an amended or substituted claim, he is thereby estopped from maintaining that the amended or substituted claim covers the combinations or devices shown in the references and from successfully claiming that the substituted claim has the breadth of the claims that were rejected. But he is not estopped from claiming and securing by his amended claim every known and useful improvement which he has invented and which is not disclosed by the references. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 714, 45 C. C. A. 544, 565, and the cases there cited; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 268, 93 C. C. A. 561, 570; Brill v. St. Louis Car Co., 90 Fed. 666, 668, 33 C. C. A. 213, 215; Hubbell v. United States, 179 U. S. 77, 83, 84, 21 Sup. Ct. 24, 45 L. Ed. 95. Counsel for the appellee contend that the cups with the dried dextrine-capsicum lining were not disclosed by the Rosell patent, so that the appellee was not estopped from maintaining that they were within the scope and meaning of the substituted claim finally allowed to him. In support of this position, they argue that the Rosell patent related to an art too remote, and the device it described was too large, and the function it was used to perform, the increase by suction of the flow of the blood to the affected part of the scalp, was too dissimilar to the function of the appellee's cup, the receiving and holding of medicament to be applied to the gum, to limit the scope of the final claim of appellee's patent or to estop him from maintaining a monopoly of the right to make and use the dextrine-capsicum cups which have been described.

[3] But the application of an old device to a new use is not always or generally even patentable. It is only when the new use is so recondite and remote from that to which the old device has been applied or for which it was conceived that its application to the new use would not occur to the mind of the ordinary mechanic skilled in the art, that there is invention in the conception of its application to the new use, and the old use fails to limit the claim of such an application. Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 388, 390, 21 Sup. Ct. 409, 45 L. Ed. 586; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 447, 23 C. C. A. 233, 248.

[4] A prior patentee who has plainly described and claimed his device or combination has the right to every use to which it can be applied and to every way in which it can be utilized to perform its function, whether he was aware of all of these uses or not. Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Eagle Mfg. Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 709, 45 C. C. A. 544, 560. Rosell described and claimed, among other things, an elastic cup a lining for holding and a lining holding a medicament secured by adhesion to the inner surface of the cup, for the purpose of applying the medicament to the scalp, or to any other part of the body. The mere change of the size of a patented device, while it still performs the same function by the use of the same principle, does not withdraw the modified device from the protection of the patent, and there is no logical way of escape from the conclusion that the large elastic rubber cup of Rosell with its pasty lining of lute for holding a medicament and in another form with its pasty lining of lute holding a medicament secured by adhesion to the inner surface of the cup for the purpose of treating a portion of the scalp, or any other part of the body, was not so remote from the small elastic rubber cup of the appellee with its absorbent lining on its inner surface fastened by adhesion for holding a medicament for the purpose of applying it to the gum, that a patent for the former did not limit or affect the scope and extent of a subsequent patent for the latter. Why then was not the appellee estopped from maintaining that these dextrine-capsicum cups were within the scope of the claim of his patent by his acquiescence in the rejection based on the Rosell patent of the broader claims he made? Counsel for the appellee answer because Rosell's lining of his cup is not absorbent, and because the appellee's withdrawal of his claim for a cup containing a medicated pasty composition was a withdrawal of a claim for a cup containing a composition that is pasty at the time of its application to the gum only. The sufficiency of these answers must be determined by the specifications and claims of the patents to Rosell and the appellee and by the action of the latter in the Patent Office.

[5] The specification and claims of a patent constitute a contract between the United States and the patentee, and they are to be read and construed together in the same way and by the same rules by which other contracts are interpreted. The specification which forms a part of the same petition or application as the claims must be read and

interpreted with them, not for the purpose of limiting, or of contracting, or of expanding, the latter, but for the purpose of ascertaining from the entire agreement, of which each is a part, the actual intention of the parties. Century Electric Co. v. Westinghouse Mfg. Co., 191 Fed. 350, 354, 112 C. C. A. 8, 12; Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33; National Hollow Brake Beam Co. v. Interchangeable B. B. Co., 106 Fed. 693, 701, 45 C. C. A. 544, 552; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 344, 72 C. C. A. 304, 308; Louden Machinery Co. v. Janesville Hay Tool Co., 148 Fed. 686, 690, 78 C. C. A. 548, 552; Electric Machine Co. v. Morris (C. C.) 156 Fed. 972, 974; Lewis Blind Stitch Machine Co. v. Premium Mfg. Co., 163 Fed. 950, 955, 90 C. C. A. 310, 315; Fullerton Walnut Growers' Ass'n v. Anderson-Barngrover Mfg. Co., 166 Fed. 443, 461, 92 C. C. A. 295, 313. When the material parts of the record are read by this rule, these facts are conclusively established. The appellee described and claimed in his original application or petition: (1) An elastic medicated suction cup; (2) a suction cup adapted to contain a medicament in the forms of a pasty composition or of a medicated piece of raw cotton, or in any other form; and (3) a rubber suction cup combined with an absorbent material for holding and retaining the medicament. The examiner rejected all these claims because Rosell's patent disclosed an elastic medicated suction cup and a suction cup adapted to contain a medicament in the forms of a pasty composition, or of a medicated piece of raw cotton, or in any other form, and Kuznik's patent disclosed a rubber sack in combination with absorbent material adapted to contain a medicament. The appellee acquiesced in this rejection, struck out of his petition all reference to the medicated suction cup and to the use of a medicated pasty composition in the cup, and reduced his claim to an elastic cup to whose inner surface an absorbent lining for holding and retaining the medicament is securely fixed. Do the dextrine-capsicum cups fall within the part of the claims rejected by the examiner, or within the part allowed and embraced in the final claim? Conceding that the linings of these cups are fixed therein and are capable of absorbing liquids, their absorbent characteristic has nothing to do with the performance of the function of the patent, so that they are not absorbent in the sense of the patent and its claim, because they already contain the medicament and are not adapted or intended to perform the function of absorbing it, and the only patentable sense of the word absorbent in the specification and claim is that the lining is capable of absorbing, and intended to absorb, a medicament, and thus to aid in the performance of the function of the device. Moreover, "lute," the term used in Rosell's patent to describe the material with which his cup is lined, is a broad word which signifies any tenacious substance, and there are many tenacious substances which are absorbent. The truth is, however, that the linings of these dextrine-capsicum cups are not linings to be medicated, but are medicated linings. They are not linings for the purpose of absorbing medicaments, but they are linings which have absorbed medicaments. The cups, therefore, are medicated cups, and they fall directly within the description by Rosell of his cup lined with medicated lute and fastened to the cup by adhesion and within

the appellee's claims for a medicated suction cup and an elastic medicated suction cup which were rejected by the examiner and were not allowed in the subsequent patent.

Again, the linings to these cups were made by placing a medicament in the form of a pasty composition in the cups and permitting it to dry. A cup so lined was claimed in the original petition of the appellee, for the clause of the petition which is the basis of that claim is not limited, as counsel for the appellee argues, to a medicated pasty composition placed in the cup immediately before its application to the gum, and the appellee's withdrawal of that claim by his amendment of his specification estopped him from successfully sustaining a claim for a cup so lined. And the conclusion of the whole matter is that, conceding that the patent of the appellee is valid, he is estopped by his acquiescence in the rejection of his claims in the Patent Office on the Rosell patent and the Kuznik patent from maintaining that the narrower claim that was subsequently allowed to him includes the cups made and sold by the defendant, and upon that ground the decree below must be reversed, and the case must be remanded to the District Court, with instructions to enter a decree dismissing the bill on the ground that the defendant has not infringed the patent.