PIERCE WRAPPING MACH. CO. v. TERKELSEN MACH. CO.

(District Court, D. Massachusetts. June 14, 1924.)

No. 1883.

1. Patents ⊜⟹328—1,153,704, for wrapping for articles of ring form, held valid and infringed.

The Pierce patent, No. 1,153,704, for a wrapping, comprising a continuous strip wound spirally and transversely around an article of ring form, as a tire casing, and a wrapping strip applied adhesively, *held* not anticipated and valid, and defendant *held* chargeable with contributory infringement.

2. Patents ⊜⟹328—1,158,278, 1,238,318, 1,263,923, and 1,432,034, for tire wrapping machines held valid and infringed.

The Midgley patent, No. 1,238,318, and the Pierce patents, Nos. 1,158,-278, 1,263,923, and 1,432,034, all relating to tire-wrapping machines, *held* not anticipated, valid, and infringed.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Pierce Wrapping Machine Company against the Terkelsen Machine Company. Decree for complainant.

Fish, Richardson & Neave, of Boston, Mass., for plaintiff.

McLeod, Calver, Copeland & Dike, of Boston, Mass., for defendant.

HALE, District Judge. In this equity suit the plaintiff alleges infringement of five patents:

(1) The wrapping patent, No. 1,153,704, dated September 14, 1915.

(2) The strip-applying machine patent, No. 1,158,278, dated October 26, 1915.

(3) The bead closer, the Midgley patent, No. 1,238,318, dated August 28, 1917.

(4) The differential adjustment patent, No. 1,263,923, dated April 23, 1918.

(5) The control and brake patent, No. 1,432,034, dated October 17, 1922.

[1, 2] The plaintiff charges that the defendant has been guilty of contributory infringement of the first patent, by supplying a machine, the purpose of which was to make wrappers of the form covered by that patent, and that the defendant directly infringes the claims in issue of all the other patents.

In patent No. 1,153,704, infringement is alleged of claims 1 and 2:

"1. A wrapping, comprising a continuous strip wound spirally and transversely upon an article of ring form, and a wrapping strip applied adhesively to the folds of said spiral strip to hold the same in fixed relation.

"2. A wrapping, comprising a continuous strip wound spirally and transversely in overlapped relation upon an article of ring form, and an adhesive wrapping strip applied to the folds of said spiral strip peripherally of the article wrapped."

In the strip-applying machine patent, No. 1,158,278, infringement is charged with reference to claims 17, 20, 21, and 22:

"17. In a machine for wrapping annular objects, feed rolls for supporting and rotating said objects, an annular shuttle rotatable through the eye thereof and having wrapping material loosely contained therein, folding, guiding and tensioning mechanism acting to fold and direct the wrapping material spirally around the article wrapped, and means operated in part by the rotation of the object wrapped for applying an adhesive tape transversely of the wrapping as the wrapping progresses."

"20. In a tire-wrapping machine, a shuttle adapted to apply a spiral wrapping on a tire, means for applying another wrapping on the outer periphery of the spirally wrapped tire, parallel to the axis of said first wrapping, and mechanism forming a part of said machine for holding said tire in upright position and adjustable for tires of different size.

"21. In a wrapping machine for applying a helical wrapper to an annular shaped article, means for applying another wrapper on the outer periphery of the article on said first wrapper, and mechanism adjustable for articles of different size for supporting an article in upright position independently of the wrapping means.

"22. In a machine of the class described, means for applying transverse and longitudinal wrapping strips simultaneously one upon the other upon an annular body, and mechanism adjustable for bodies of different size to support the same in upright position for wrapping."

In the Midgley patent, No. 1,238,318, infringement is charged of claim 6:

"6. In a machine for wrapping annular tire casings and the like, the combination of an incomplete annular housing, an annular shuttle having an opening for the passage of a tire casing therethrough, means for rotatably supporting the shuttle within the housing, means for supporting within said shuttle the tire casing to be wrapped, means for turning said shuttle and tire casing at predetermined relative rates, a roll of wrapping material rotatably mounted on the shuttle, and means for pressing together the two edges of the tire casing adjacent to the point at which the wrapping material is being applied thereto."

In the differential adjustment patent No. 1,263,923, infringement is charged of claims 1, 3, 15, and 16:

"1. In a wrapping machine of the class described, connected mechanisms simultaneously and differentially adjustable for holding and rotating an annular article, and a paper-carrying shuttle adapted to rotate through the eye of the article to apply a spiral wrapping thereon, said shuttle positioned forwardly of the center of the tire."

"3. In a wrapping machine of the class described for annular articles, means supporting and rotating the article, mechanism for applying a spiral wrapping thereon, said mechanism comprising a power-driven sectional shuttle positioned to rotate through the eye of the article in advance of the center thereof, and said means simultaneously and differentially adjustable to maintain the advance relation between the shuttle and article in all adjustments of said means."

"15. In a tire-wrapping machine of the class described, operatively connected differentially adjustable supporting means for the tire, a shuttle disposed to rotate through the eye of said tire, said means in all adjustments positioning said tire to permit rotation therethrough of said shuttle in advance of the center of the tire, and swingingly mounted gravity action guiding mechanisms engaging the upper periphery of the tire to maintain the same properly positioned upon said differentially adjustable means."

"16. A wrapping machine comprising a plurality of simultaneously and differentially adjustable supporting members, an aligning member automatically adjustable to and from the supporting members by the insertion of the article to be wrapped, and mechanism for wrapping the article."

In the control patent, No. 1,432,034, infringement is charged of claim 1:

"1. In a tire-wrapping machine, means for rotatably supporting a tire to be wrapped, a wrapping material carrier rotatable through the eye of the tire, means for pressing the beads of the tire to be wrapped, mechanisms for stopping the rotation of the tire and of the wrapping material carrier, and a single lever for controlling said stopping mechanisms and pressing means."

The defendant denies the validity of all the patents. It alleges anticipation in the prior patented art, and as to some of the patents in the prior unpatented art. It denies infringement.

In tracing the history or development of its machine, the plaintiff says that prior to 1911 coils of wire were wrapped by hand; automobile tires were not generally wrapped; hand wrapping was expensive, tedious, and unsatisfactory; the results were not permanent, regular, or coherent. With no means of securing the ends of the various strips, the handling of the heavy coils caused the paper to shift about the coil and unwind, exposing the wire to dirt and injury. It was common practice to use individual strips of paper; the use of a roll of paper not being successful in the process of wrapping by hand.

Plaintiff introduced testimony as to the construction of its machines. It offered in evidence its commercial wire-wrapping machine

made in accordance with the second patent, No. 1,158,278. It introduced also one of its commercial tire-wrapping machines, which is claimed to embody all of the patented improvements in suit. It also offered one of defendant's tire-wrapping machines, together with a set of drawings prepared by the defendant. The manufacture and sale of a machine similar to the machine introduced is admitted by the defendant by stipulation.

In designing their machine, plaintiff claims that the Pierce brothers found it necessary to use narrower paper than is used in hand wrapping, in order to house it within a shuttle which would pass through the eye of the coil, and also to use a less degree of tension, and as a result of these changes the paper was applied in their machine with less tension and with less overlap. Plaintiff described the long-continued attempts of the Pierce brothers to make a practical method for wrapping coils of wire. Learned counsel for plaintiff thus describe the attempts to solve the problem:

"If some means could be devised for fixing the convolutions of paper in position immediately upon their application, the whole trouble would be solved. A strip of gummed tape applied about the periphery of the coil and secured to each turn or fold thereof would solve the difficulty. Mr. F. M. Pierce communicated this thought to his brother and partner, Mr. W. B. Pierce, and the two men proceeded to devise an arrangement whereby their machine could be equipped with a device for moistening and feeding a strip of gummed paper directly to the rotating coil of wire, so that, as the coil or wire rotated, its rotation would draw out a moistened adhesive strip and apply it to the periphery of the wrapping, with the result that each turn of the paper would be fastened to its neighbors, and the whole wrapping would become a unitary, integral body before the coil of wire left the machine."

It is claimed that there was no suggestion in the prior art from which the Pierce brothers could solve their difficulty; that the invention of the wrapping and the machine which makes the wrapping are shown in the first two patents, Nos. 1,153,704 and 1,158,278; that in 1911 few manufacturers were wrapping their automobile tires for shipment, and while their efforts have been originally centered upon wrapping coils of wire, the Pierce brothers, about that time, sought to extend the use of their wire-wrapping machine to the wrapping of automobile tires. Midgley and one W. C. Stevens were employed by certain manufacturers to design tire-wrapping machines; and both these inventors designed machines which the plaintiff acquired. The Stevens machines embodied means for raising or lowering the tire according to its size, so that the point where the tire is wrapped will be central of the shuttle, there being provided independently adjustable swinging arms for the supporting and driving rollers, which might be adjusted to spread them apart for a large tire and bring them closer for a smaller tire.

The Pierce brothers undertook to improve this machine, one of their first efforts being to connect the two roller-supporting arms for simultaneous movement, thereby doing away with the independent adjustment of the two rollers. They also equipped the machine with the combination clutch and brake, and with the gum tape mechanism taken from their older patent, No. 1,158,278; the latter improvement necessitating the holding of the tire in upright position, which was accom-

plished by means of the vertically swinging flanged upper roller resting on the top of the tire.

The problem was to make a machine which could be used successfully on different sizes of tires. Otherwise, each size of tire would require a separate machine. A small tire drops down further between the supporting rollers than a large tire, and therefore either the tire or the shuttle must be raised or lowered to establish concentricity of tire and shuttle. The tire is revolving in one plane, while the shuttle is revolving in an intersecting plane. In order to obtain a flat condition of the paper upon the tire, it is essential that it be led to the tire upon an angle, so as to give to the paper the proper pitch or lead dictated by the pitch of the convolutions of the wrap, this pitch being imparted by an angular pin on the face of the shuttle. The paper should be wrapped about the tire at approximately its lowermost point.

The opening in the shuttle, or the path about which the angular guiding pin travels, is fixed. A large tire fills more of the opening than a small tire, consequently the length of paper from guiding pin to tire is greater on a small tire than on a large tire, and while the angle is maintained, it is now apparent that the point to which this paper is to be applied on a small tire must be moved further away from the shuttle than the same point on the larger tire.

After trying several expedients, it is in testimony that Mr. F. M. Pierce worked out the principle of moving the two rollers to different distances by connecting the cross-link between the two swinging arms at different distances from the centers of oscillation, and it is claimed that he thus solved the problem of differential adjustment resulting in patent No. 1,263,923.

Plaintiff traces also the problem of bead closing, which is claimed to be solved in the Midgley patent. The substantial purpose of the patent is found on page 2 of the specification:

"The texture of the paper used for this wrapping is such that no considerable strain can be imposed thereon without danger of breaking the paper web. It is to effect a comparatively tight wrap without imposing a breaking strain on the paper during the wrapping operation, that the movable flanges are employed, as the same, by compressing the beads of the tire shoe toward each other at the point of wrap, * * * permit the paper to be wrapped thereon in a comparatively loose manner; the expansion of the beads toward their normal position as the wrapped portion of the tire shoe passes beyond the flanges causing the spiral wrapping to be tautened, and thus providing a comparatively tight wrap without undue tension or strain on the paper web during the wrapping operation."

The plaintiff says that in 1919, when it sought to incorporate bead-closing rolls in the machine, it was notified of a claim of infringement of the Midgley patent in suit, and accordingly it bought that patent.

In reference to the unified control of the clutch, brake, and bead closers, the plaintiff says that the last patent, No. 1,432,034, represents a development in the Pierce wrapping machine by which a single lever is utilized for the operation of the brake and clutch and the bead closers. Of the patents which had preceded it, probably the F. M. Pierce patent, No. 1,263,923, was the closest approach. In this patent one lever was designed to disconnect the main driving shaft from the source of power by a clutch, and at the same time apply a brake to

the shuttle driver. The Midgley patent, No. 1,238,318, shows the bead closers operated by a lever. Mr. Paul Pierce conceived the idea of operating all of these mechanisms from a single lever. This improvement was adopted in 1920, and the plaintiff says it represents a combination of mechanical elements which simplifies the work of the attendant and increases the speed and efficiency of the wrapping machine.

I have given a brief summary of the plaintiff's view of the history of the development of its machine, and of the general scope of the several patents in suit. I now pass to the question of

## Anticipation.

Upon this question the learned counsel for the defendant has, in a very orderly and logical manner, grouped all the patents relating to the alleged anticipation of each of the patents in suit.

The defendant alleges anticipation, in the prior patented art, of the first and second patents, Nos. 1,153,704 and 1,158,278. The wrapping patent involves a continuous strip of paper, spirally applied; and the second has a strip of gum tape adhesively applied to the folds of the first wrapper, to hold them in fixed relation, and, according to claim 2, in overlapping relation; and it is stated that the invention relates to wrapping for bodies of a ring form, wherein a secondary wrapping is applied adhesively over the first wrapping, "securing all of the folds of the wrapper together."

The defendant cites instances of the use of gum tape in the sealing of packages and around mail tubes, boxes, cardboard cartons, paper boxes, bales of fine wire, and other articles. It gives an interesting history of the use of gummed tape. It cites Ferres, No. 726,894, May 5, 1903; Crowell & Watson, No. 902,563, November 3, 1907; Gair et al., No. 981,993, January 17, 1911; Bodine, No. 852,761, May 7, 1907; Chapin, No. 703,184, June 24, 1902; Patureau, No. 49,902, May 24, 1864; Haff, No. 237,267, February 1, 1881; Worcester, No. 302,461, July 22, 1884; Shirley, No. 273,902, March 13, 1883; Marks, No. 245,644, August 16, 1881; and Mauran, No. 602,850, March 7, 1889; also Dixon, No. 351,584, October 26, 1886; Wright, No. 700,713, May 20, 1902; and Miller, No. 840,642, January 8, 1907; and other patents of a similar character, showing wrapping machines and gummed stay strips in various relations, but none showing the use of gummed tape in the same relationship as in the two patents before the court or in combination with the spiral wrapping.

The defendant says that the art of wrapping annular objects is old, and that the patent to Dixon, cited above, shows a practical machine, in use 40 years ago, for wrapping a coil of wire; that the patent to Wright shows a machine for wrapping large bundles of wire, comparable in size and shape to an automobile tire; that the Miller patent shows a commercial machine capable of wrapping either cloth or paper about a tire; that this machine closed the beads, as well as wrapped the tire; and that Miller is more entitled to be called the inventor of tire wrapping than the Pierces. Of the above, it seems that Wright was considered in the Patent Office, and it is urged that Wright's is the best of the patents cited. No one of the patents cited seems to me to dis-

close the idea of Pierce in using the combination of a spiral wrapping about the object to be wrapped, and the gummed tape around its circumference, and holding the coils in place.

The plaintiff urges that a function of the gum strip is to fix in position the several folds of the paper, so that they cannot slip, and also an important function lies in the fact that, if any fold of the paper breaks, the evil result is stopped immediately, and does not spread to the whole wrapping, and make it uncoil, and that the use of the strip of gum tape makes it possible to use a cheaper grade of wrapping paper, and thus tends to economy.

It appears that the claims in suit were first rejected in the Patent Office on patents which showed a spiral wrapping of paper, and upon other patents which showed the use of gum tape in the sealing of packages, but that finally the claims were allowed, on the ground that the rejected claims covered a wrapping for an article, in ring form, such as a bicycle tire, the wrapping being spiral, and that, to prevent the spiral turns from becoming displaced, a strip is pasted over the turns of the wrapping, which holds them in place relatively to each other.

It appears, also, that the defendant now relies upon the same or equivalent prior patents to those which were considered by the Patent Office and rejected as inadequate to meet the invention.

I am not persuaded that the defendant has proved anticipation in the prior patented art of the machine patents—the first two patents.

The defendant alleges, also, anticipation of these patents in the prior unpatented art; it bases its contention upon the testimony of Haggerty and Guthrie, employés of the American Brass Company, and Rideout, salesman of the National Binding Machine Company. Haggerty and Guthrie testify that the Holmes, Booth & Hayden Company, the Benedict & Burnham Manufacturing Company, and the American Brass Company, which succeeded each other in the manufacture of insulating wire, wrapped by hand bundles or coils of wire with strips of paper spirally in the manner shown by plaintiff's witness Dunbar, and tied the end of the wrapping with wire. This was the practice up to 1907, when Mr. Rideout, the salesman and sales manager of the National Binding Machine Company, then of Boston, leased to the Benedict & Burnham Manufacturing Company a gum stay strip serving machine. From that time gummed strip was used in place of wire or string. Mr. Rideout says that he went to various manufacturers of insulated wire during 1907, and showed them how to use gummed tape to secure spiral paper wrappings on the coils of wire. Bills for the use of the binding machine "as per lease agreement March 22, 1907," were produced, and counsel for the plaintiff stipulated that the strip-serving machine in question was in the possession of Benedict & Burnham Manufacturing Company from March 22, 1907, until November 12, 1917.

Without reciting all the proofs on this point, it is enough to say that I think the defendant has failed to show by the measure of proof required in such cases that the gum tape was applied to any other use than merely to fasten the loose ends of the last fold of a wrapper. I think that anticipation in the prior unpatented art is not proven with

the degree of certainty required by Emerson & Norris v. Simpson, 202 Fed. 747, 750, 121 C. C. A. 113.

In the above case Judge Putnam, speaking for the Circuit Court of Appeals in this circuit, said:

"The result of all these [cited] cases is that, with reference to questions of the class which we have here, namely, the identity of structure as between what is patented and what is alleged to have anticipated it, something more than oral testimony, even of the highest character, is required where there has been a considerable lapse of time."

In Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 71, 43 Sup. Ct. 322, 67 L. Ed. 523, in speaking for the Supreme Court, Mr. Chief Justice Taft refers to the rule that evidence to prove prior discovery or use in the unpatented art must be clear and satisfactory, citing the Barbed Wire Patent Case, 143 U. S. 275, 284, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, and Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. In the case before me the defendant has produced no "concrete, visible, contemporaneous proofs which speak for themselves," within the meaning of the rule stated by Judge Putnam.

The defendant urges that the Midgley patent for bead closers, No. 1,238,318, is anticipated by the Miller patent, No. 840,642, and the Miller machine. It will be seen that the purpose of Midgley's bead closers, as shown by the claims and by the specification, was to enable a light wrapping paper to be applied under light tension, and yet to insure that the tire should be tightly wound.

The Miller patent was not primarily for wrapping tires; it was for the purpose of vulcanizing tires. In vulcanizing a tire, the tire must be mounted upon a core which fills the interior of the tire and supports the beads, forming a rigid support for the walls of the tire. The tape is wrapped around the tire, within which the core is inclosed, under a high degree of tension, so that the tape forms an external mold for the rubber while it is being vulcanized. The Miller patent states:

"In the art as is ordinarily practiced, when a tire is first made or is repaired, it is necessary to wrap strips of fabric about three inches wide *tightly* around the tire in order to hold the new rubber in place when it is being vulcanized. It is a desideratum that the tire should be wrapped *very tightly*, since the extreme pressure forces the new rubber into the cloth and causes it to adhere better than when the tire is wrapped loosely. * * *

"It is therefore a primary object of the present invention to provide a machine which shall automatically accomplish a *tight* wrapping, such as has been heretofore done by hand."

It was essential to the Miller device that it apply the cloth wrap under high tension, whereas the purpose of Midgley's bead closers was to enable the paper wrap to be applied with light tension.

The plaintiff urges that the presence of a core within the tire would defeat that useful function of the bead closers in the Midgley patent, which consists in bringing the tire to a rounder cross-section, thereby enabling the machine to be operated faster, as has been brought out above. When the core is placed in the tire, it is impossible to bring the beads together; the beads are definitely spaced and held apart by the core, in the position which they will normally occupy in the completed tire.

The Miller machine was before the court. It was operated with the cross-chain upon it, and without the cross-chain. When the cross-chain was removed, only one feed roller was driven, and a tire without a core was introduced into the machine. It was noted that but little feed action was imparted to the tire by the feed rollers, and the paper piled up in layers on the tire. When Mr. Miller pushed the tire through the rollers, it passed along; when he ceased to feed the tire, it had very little motion, and the wrapping piled up around the tire. Even when the cross-chain was applied, so as to provide two of the rollers of the Miller machine, instead of one, the operator was required to stand beside the tire and feed it into the rollers, guiding it and raising or lowering it to accommodate the tire to the feed rollers; and when the tire was left to rotate freely it started to climb up on one side of the machine and creep down on the other side, until it got out of position.

It is urged that the defendant has failed to prove the use of the cross-chain prior to the Pierce invention. It cannot be said that the Miller machine is an operable machine for wrapping finished tires, either with or without the cross-chain. I cannot find in the Miller patent, or in the Miller machine, two of the principal features of the claim in the Midgley patent, namely, the means for rotating the tire through the shuttle at a definite and fixed relative rate with respect to the rotation of the shuttle, and the separate and distinct elements for supporting the tire and for pressing together the beads.

I think the Miller machine cannot be held to be in anticipation of the Midgley patent. As stated by Miller, his machine was intended to wrap tires with cloth upon forms for vulcanization with a high tension upon the wrapper, which is the opposite of the Midgley patent, by the use of which paper can be applied with a light tension, to be subsequently tightened by expansion of the tire.

The defendant also cites, as anticipatory to the Midgley patent, the following patents: Vincent, 794,473, July 11, 1905; Rowley & Coomber, 991,458, May 2, 1911; De Laksi &. Thropp, 1,011,450, December 12, 1911.

These patents relate to the building of the tire casing from layers of rubber and fabric. It is enough to say that there is no analogy in purpose, function, or operation between building a tire and wrapping a completely finished and vulcanized tire.

In the opinion of the court, the defendant has failed to show anticipation of the Midgley patent.

Defendant asserts anticipation in the prior patented art of the differential adjustment patent to Pierce, No. 1,263,923. The claims at issue present mechanisms simultaneously and differentially adjustable for holding and rotating an annular article and a paper-carrying shuttle adapted to rotate through the eye of the article to apply a spiral wrapping to it. In seeing the plaintiff's machine operated, it is found that, as the two rollers rise and fall, one roller moves faster than the other roller, so that, when the rollers are brought together to raise a small tire in the central position with relation to the shuttle, the center of the small tire is moved to the right with respect to the position occupied by the center of the large tire. This is to enable the annularly

fed paper to be applied to the smaller tire in the same relation to the tire as in the case of the larger tire.

Of the prior patents set up by the defendant, the principal are Dixon, No. 351,584; Wright, No. 700,713; Pierce, No. 1,158,406, October 26, 1915; Pierce, No. 1,158,278, October 26, 1915; Pierce, No. 1,158,405, October 26, 1915; Stevens, No. 1,196,044, August 29, 1916; Miller, No. 840,642, January 8, 1907; and a certain British patent to Olier, issued in 1911.

The Stevens patent is the most important of these citations. The defendant urges that the whole invention resides in Stevens. The plaintiff purchased this patent, and also purchased two machines built in accordance with it. It does not appear that Stevens had any idea of the invention disclosed in the differential adjustment shown in the Pierce patent. The Stevens invention seems to have been intended to provide means for centering the wire with reference to the shuttle, but he made no provision with reference to operating the same machines with different sizes of tires. Under the Stevens patent it was necessary to have as many machines as you have tires. Pierce, by one adjustment, did two things: First, he placed the tire centrally of the shuttle; and, secondly, he automatically shifted the position of the center of the tire to the right or left, according to whether a large tire or a small tire is being wrapped. Stevens had no mechanism by which his two supporting rolls were simultaneously adjusted with reference to the shuttle, and also, by the same operation, differentially adjusted with reference to each other. The Stevens patent was cited as a reference on Pierce's patent in the Patent Office, and was found not to be pertinent. Testimony was offered to the effect that the Stevens machine, which the Pierce brothers bought, would not work satisfactorily with tires of different sizes, and that Pierce was led to the experimentation which resulted in his making the invention of the differential adjustment. The development of the Pierce machine, from the Stevens machine, was, I think, an invention of merit. None of the other patents cited in the prior art show any differential adjustment whatever. Nothing in the prior art appears to me to anticipate the invention of the differential adjustment patent.

The defendant alleges anticipation in the prior patented art of the Paul Pierce patent, No. 1,432,034. This patent covers the combination of mechanical elements whereby the operator by a single lever can throw out the clutch or driving mechanism, apply a brake to the shuttle or shuttle driver, and open the beads. A reverse movement of the lever in the plaintiff's machine operates to set all of the mechanism in operation again. The patent presents a mechanical construction, useful in saving time and in simplifying and quickening the operation of the machine.

Fourteen citations in the prior patented art are set up by the defendant in anticipation of this patent. None shows the combination of elements which has been claimed. Pierce, 1,158,278, shows a combination clutch and brake on the wire-wrapping machine. Midgley shows the bead closers, but with separate control levers for the bead closers and the clutch, and no brake for the shuttle. Diehl & Schramm

shows the application of a brake and clutch on a sewing machine and is a remote art. I think the other references add nothing of importance. I think the defendant has failed to show anticipation of this patent.

## Validity.

The defendant says that the two machine patents in suit are invalid, both by reason of anticipation and lack of invention; that the gummed tape is merely put into a new field, but without change of function; and that the case falls within the general doctrine that the mere extension of a well-known device into another field of usefulness will not support a patent. The defendant refers, especially, to National Binding Machine Co. v. Larkin, 233 Fed. 998, 1003, 148 C. C. A. 8; O'Brien-Worthen Co. v. Stemple, 209 Fed. 847, 852, 128 C. C. A. 53; T. Schrieber & Son Co. v. Grimm, 72 Fed. 671, 674, 19 C. C. A. 67. The learned counsel for the defendant calls attention to the decision by the District Court of Maine, in McMillin Co. v. Androscoggin Pulp Co., 291 Fed. 134, 138, where this court held that strengthening and reinforcing agents are improvements in any art, but invention in such agents is to be found only in discovering a new principle or employing new means. He urges that the use of gummed tape to bind around the old spiral wrapping of a bundle of wire stands in exactly the same position as the use of a paper binding, in the Androscoggin Pulp Company Case, to hold together the edges of plies of pulpboard, and that the case at bar does not show invention any more than the case just cited. He contends, further, that the Pierce machine patents present merely an assemblage of old elements, and that, while their operation may save time and constitute an improvement in the art, they are nothing but an aggregation, and perform no new and useful function; that each works out its own result and nothing more; and that there is no exercise of the creative and inventive faculty, but merely piling up an aggregation of old elements. Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 431, 38 Sup. Ct. 547, 62 L. Ed. 1196; Alvey-Ferguson Co. v. Peter Schoenhofen Brewing Co. (D. C.) 245 Fed. 762, 764; Muser v. Bell (C. C. A.) 278 Fed. 904, 910; Reckendorfer v. Faber (the lead pencil case) 92 U. S. 347, 357, 23 L. Ed. 719.

On examination of the record, it is found that, when the wire industry was developed into the tire industry for automobiles no efficient way had been found in hand wrapping or in the patented art for producing a permanent wrap for tires in commerce. The Pierces had made attempts and failures in trying to produce a competent wrapping machine. They had no success until they produced the machine brought before the court, presenting an adhesive and peripheral strip around many folds of paper to constitute a wrapping. No one had ever before used a simultaneous application of the two wrappers, namely, of the strip and of the paper wrappings acting in conjunction, to produce a commercial wrapper.

I think the gum tape supplying and moistening device, the tire supporting and rotating mechanism, and the shuttle, form a true combination to produce a permanent wrapping, and that this was clearly a new

and useful result; it was such a combination as was not presented in the Grinnell Washing Machine Case, but which was described in that case by Judge Day, who said:

"Generally speaking, a combination of old elements in order to be patentable must produce, by their joint action, a novel and useful result, or an old result in a more advantageous way."

See, also, Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

In the Androscoggin Pulp Co. Case, supra, this court, in Maine, had a case before it where the patentee had bound an exposed edge of clothboard for the purpose of strengthening the product. The claim at issue in that case related to a laminated pulpboard, the several layers of which were united by an adhesive cement, their edges being reinforced with a paper binder, and the court said:

"I am not unmindful of the fact that the action of the Patent Office in granting a patent should have weight in determining the patentability of an invention. In the case before me the proofs do not show that anything in the prior art was before the Patent Office except the wooden clothboards."

In the case at bar it is not shown that any means whatever existed in the prior art for uniting all of the folds of a spiral wrap about an annular object to prevent slipping, and to make a permanent wrap. In the clothboard case, the patentee did nothing but reinforce and give strength to a clothboard, whose laminated folds had already been brought together. It was not pretended that anything more was achieved than reinforcement or strengthening of the board. In this case the gum stay strip of the Pierce wrapper is more than a reinforcing band about the wrap; it is the means by which the many folds of the wrapper are brought together and united into an entire and permanent wrapping. I agree with the Patent Office that this presents a use of the inventive faculty. I think it must be said that the Pierce machine patents are valid patents.

I have often had occasion to refer to Butler v. Bainbridge (C. C.) 29 Fed. 142, in which case Judge Coxe pointed out the perplexities which surround questions of patentable invention, and said that such questions cannot always be solved by an examination of adjudged cases which "serve to illuminate the paths to be traversed, but he who desires to select the right one must depend largely upon his own judgment." It is, of course, important, not only to protect mechanics in their right to use old devices, but to safeguard inventors in their discoveries.

In Gerosa et al. v. Apco Mfg. Co., 299 Fed. 19, the Circuit Court of Appeals of this circuit have just sent down an opinion in a case wherein to an old structure is added a new structure, which functions the same in relation to the old structure as it did by itself. The court said that this is simply an aggregation of old elements and does not present a patentable invention, and that it cannot be sustained as a combination patent. In the case at bar the old gum stay strip is made to function in an entirely different way from its old use. It is applied to the periphery of a wrapping with the result that each turn of the paper will be fastened to its neighbors, and the whole wrapping is made

a unitary and integral body. This must be held to be a new and useful purpose.

## Infringement.

The plaintiff says that an examination of the two machines as they stand before the court shows striking features of similarity; that the tire in both machines is supported in upright position upon two driving drums, connected for rotation by chains extending down the arms which support them. The upper side of the tire is supported by similar swinging flanged rollers. The shuttles in both machines are located between the two supporting rollers. The paper in each shuttle passes over the same tensioning means. the same edge folder, and the same inclined guiding pin. Similarly positioned bead-squeezing rollers are placed close to the shuttle, and similar gum tape feeding devices are located at the opposite side of the machine, to apply gummed tape in the same manner in both instances to the paper wrapping at the same point on each tire. In adjusting the machine from a large to a small tire. the smaller tire in each machine moves bodily to the right. A single lever sets the machine in operation and brings the bead closers together. and a single lever stops the machine, applies the brake, and opens the bead closers. The operation in both cases is the same, the finished products are alike, and the plaintiff urges that the defendant's machine is constructed and organized to do the same thing which the plaintiff's machine does, and for the same purpose.

The defendant urges that its machine presents another method of accomplishing an old result achieved by the plaintiff's machine; that defendant has one stationary supporting roller, the other roller movable vertically. This produces the lateral movement of the tire and makes the paper lie flat. The adjustment for centering the shuttle is provided by the vertical movement of the yoke which carries the shuttle. Defendant's machine does not infringe the claims of the patent which are based upon simultaneous movement of both supporting rolls. It is not true that the movement of the shuttle and one supporting roll in defendant's machine is the equivalent of moving both supporting rolls simultaneously and differentially in the machine of the patent in suit; the same result was accomplished by old patents, and the claims of the Pierce patent are of necessity limited to the specific mechanism devised by Pierce for accomplishing this result, which was old and well known. Pierce's invention must lie in the specific mechanism employed to accomplish the result. Defendant uses other mechanism, and therefore it does not infringe.

Upon examining the question of infringement arising with reference to each patent, it is found that in the case of the first patent the defendant's machine clearly uses the stay strip, applied to the folds of the spiral strip peripherally, in the same manner that the plaintiff's machine uses it. It is shown that defendant sold a machine adapted and intended to apply to tires a wrapper of the form covered by the claims of the first Pierce patent. The defendant has, then, been guilty of contributory infringement, which is "the intentional aiding of one person by another in the unlawful making or selling or using of a patented invention." Goodyear v. Jackson, 112 Fed. 146, 148, 50 C. C. A. 159, 161 (55 L. R. A. 692).

The defendant has clearly infringed the second patent—the strip-applying machine, patent No. 1,158,278, for it is clear that the defendant's machine uses the strip-applying elements, described in the four claims at issue, in the same manner as used by the plaintiff's machine.

In the Pierce patent, No. 1,263,923, the differential adjustment patent, a vigorous attempt to escape infringement is made by the defendant on the ground that the patent should not be given broad enough scope to give application to the doctrine of equivalents, and that the defendant avoids infringement by moving its shuttle rather than its tire to obtain the center line adjustment. I think the Pierce patent cannot be given so narrow a scope as to allow the contention of the defendant to prevail. In the Reece Buttonhole Machine Co. Case, 61 Fed. 958, 10 C. C. A. 194, Judge Putnam, in speaking for the Circuit Court of Appeals, did not sustain the position of the patentee in attempting to limit the patentee to machines in which the frame travels and the plate remains at rest, but held infringement where the same result was accomplished by moving the plate while the frame remains at rest. It is unnecessary to discuss further the clear and ingenious argument of the learned counsel for the defendant in seeking to avoid infringement of this patent. I must hold that the defendant's machine is constructed and organized to do the same thing which the plaintiff's machine does for the same purpose, and that it infringes the plaintiff's machine.

A sharp contention is made, also, in reference to infringement of Midgley patent—the bead-closing patent—No. 1,238,318. In this patent the defendant's machine seems to me to present every element of the claim at issue. It has the incomplete annular housing with the means for supporting and rotating the shuttle. It has the means for supporting and rotating the tire through the shuttle; supporting and rotating means serving to drive the shuttle and the tire at predetermined relative rates of speed. It has the roll of paper on the shuttle, and the "means for pressing together the two edges," namely, the beads, of the tire casing adjacent to the point at which the wrapping material is being applied.

The defendant urges that the Midgley bead closers press directly against the beads of the tire, while the defendant's bead closers are rollers which do not touch immediately the edge of the tire, but press against the sides of the tire above the beads; and defendant urges that its bead closers are analogous to the bead closers in the Miller machine. It makes no difference, I think, whether the bead-closing devices press immediately against the beads or against the side walls of the tire, so long as they operate to close the beads for the purposes set out in the Midgley patent. Functionally the same thing is done in both methods of use. After an examination of the Miller rollers, I think they had no such function as is found in the Midgley rollers. I am constrained to find that the defendant's machine infringes the Midgley patent.

Contention is also made in regard to infringement of the Paul Pierce patent for automatic bead closers. This patent is called "the control and brake patent." In applying claim 1 at issue to the defendant's machine, the defendant contends that in the clause "mechanisms for stopping the rotation of the tire and of the wrapping material car-

rier," the plural "mechanisms" is used advisedly, and that there is no other construction which can be given the claim, except that it is limited to machines for which there are two brakes, one for the shuttle, and one for the mechanism which rotates the tire. Defendant's machine has only one brake, namely, a brake on the driving disk; it omits altogether the mechanism for "stopping the rotation" of the wrapping material carrier; and that it therefore does not contain all the elements to which the claim is limited. In applying the claim to the structure of the defendant's machine, we find the means for supporting and rotating the tire to be wrapped in the pulleys; the wrapping material carrier is the shuttle; the means for pressing the beads of the tire are the rollers; the mechanisms for stopping or rotating the tire and the shuttle are the movable mounting for the motor and the brake, and the single lever for controlling the stopping mechanism; and the pressing means is the treadle, which, on depression, applies the brake and releases the treadle, which opens up the bead closers and permits the motor platform to drop. The patent must be given broad enough interpretation to allow the doctrine of equivalents, and I think the defendant's machine functionally does precisely what the plaintiff's machine does.

The defendant says that the fact that in the plaintiff's patent a supplemental brake is provided for the shuttle is of no moment in considering the claim, as such brake is not included as an element. I think the claim sued upon is broad enough to include such a structure as that employed by the defendant, and that infringement is shown.

I therefore find that the defendant is guilty of contributory infringement of the first patent, and of direct infringement of the other patents in suit.

## Commercial Success.

I think the plaintiff is entitled to consideration in respect to what the record shows with reference to commercial success. The evidence confirms the allegation of the plaintiff that, when the Pierces entered the art of wrapping coils of wire with paper, there existed no machine for performing this work; that there were no practical commercial wire-wrapping machines on the market prior to the Pierce's machine; that no success was achieved until Pierce produced the adhesive peripheral strip and applied that strip to the wrapping operation. Upon perfection of the invention, the record shows a recognition by the wire manufacturers of the country. Testimony tends to show, too, that about nine-tenths of the present-day users of the tire-wrapping machine use the gum tape. Without going into the details of the proofs, I am persuaded that the machine made by the use of the patents in suit has attained a commercial success which entitles it to distinct consideration. This commercial utility and success may properly be invoked in favor of the patents.

I find, then, that the patents in suit are valid; that they have not been anticipated, either in the prior patented or unpatented art; and that they are infringed by the defendant. A decree may be entered for the plaintiff for an injunction and for an accounting. The plaintiff recovers costs. The plaintiff may present a draft decree on or

before July 1, 1924. The defendant may present corrections, if any, on or before July 10, 1924. The decree may be settled July 22, 1924, at 10 o'clock a. m.